UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

JUSTA BESU,

     Plaintiff

v.

MSC CRUISES (USA) INC.,

     Defendant.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff, JUSTA BESU (hereinafter "Plaintiff" or "BESU"), hereby sues the Defendant, MSC CRUISES (USA) INC (hereinafter "Defendant" or "MSC CRUISES") and files this Complaint for Damages and says:

## THE PARTIES AND JURISDICTION

1.    This is an action for damages which exceed $75,000 exclusive of interest, costs, and attorney's fees.

2.    **THE PLAINTIFF.** The Plaintiff, JUSTA BESU, is *sui juris* and is a citizen and resident of Miami, Florida.

3.    **THE DEFENDANT**. The Defendant, MSC CRUISES (USA) INC., is incorporated outside of the state of Florida, but does business in the State of Florida, and at all times material hereto was and is doing business in Broward County, Florida. At all times material hereto, the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

1

4.     **FEDERAL SUBJECT MATTER JURISDICTION**. This action arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333.  Further, this action is being filed in Federal Court in Broward County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5.     **VENUE AND PERSONAL JURISDICTION**. The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

(a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

(b) Had an office or agency in this state and/or county; and/or

(c) Engaged in substantial activity within this state; and/or

(d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

7.     **DATE OF THE INCIDENT**.  The incident occurred on November 1, 2018.

8.     **LOCATION OF THE INCIDENT.**   The incident occurred onboard the vessel the *MSC Divina*, a ship in navigable water, while the Plaintiff was a passenger onboard.  Accordingly, the Plaintiff's claims are governed by general maritime law.  Specifically, the Plaintiff's incident occurred in or in close proximity to the Calumet Buffet while the ship was in navigable waters.

9.     **STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and accordingly was an invitee while on the vessel

10.     **DESCRIPTION OF THE INCIDENT.** MSC CRUISES owes a duty of reasonable care under the circumstances. The circumstances giving rise to this cause of action are as follows. MSC CRUISES custom built the *MSC Divina* cruise ship in a shipyard in France. The *MSC Divina* is a cruise ship which MSC CRUISES had custom built to specifications and designs which were made by or under the supervision and participation of MSC CRUISES. The *MSC Divina* was designed by or at the direction of MSC CRUISES' shoreside New Build and other shoreside departments. MSC CRUISES employ architects, designers, and engineers.

11.     The *MSC Divina* has a capacity for 4,345 passengers.  The exterior and interior of the ship was built in France at a shipyard under the constant supervision of MSC CRUISES' onsite construction managers, designers, architects, and engineers. Under the contract with the shipyard, MSC CRUISES not only had full access to the ship to inspect and the ability to inspect the designs used for construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. MSC CRUISES hold the ultimate control under their contract with the yard, if an item or design is rejected or at issue and not resolved, MSC CRUISES can withhold payment.  That includes the materials used at Calumet Buffet Restaurant aboard the *MSC Divina* which caused this fall and these injuries.

12.     The *MSC Divina* was delivered to MSC CRUISES as finished on May 19, 2012. MSC CRUISES has operated and maintained the ship continuously since that time. MSC CRUISES also own and operate the *MSC Splendida, MSC Fantasia, MSC Preziosa, MSC Seaside, MSC Meraviglia and MSC Seaview*.  MSC CRUISES has operated and maintained its ships, listed above,

continuously since the time when each of those ships were first built and put into service. And MSC CRUISES also custom built to specifications and designs which were made by or under the supervision and participation of all MSC CRUISES ships, listed above. The design and construction of these ships was under the supervision and with the participation of MSC CRUISES personnel who were stationed onsite in the shipyard during construction.

13.    MSC CRUISES is in the hospitality business of operating bars and buffet restaurants onboard its cruise ships. The operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds.  One of MSC CRUISES' busiest central locations is its buffet restaurants. MSC CRUISES allows passengers to walk throughout its buffet restaurants which are comprised of multiple food and drink stations and seating areas with tables and chairs. MSC CRUISES allows passengers to get food and drinks from the service stations as many times as they like. MSC CRUISES knows that passengers will move throughout the buffet restaurant on a repetitive basis. MSC CRUISES also knows that its buffet restaurants are busy highly trafficked areas. Therefore, MSC CRUISES knew or should have known to make sure there are no tripping hazards in a line of passenger travel.

14.    MSC CRUISES placed a fabric banners, signs and/or dividers between the main walkway and the seating area.  All of the MSC CRUISES' fabric banners, signs and/or dividers have a metal base at the bottom of the fabric banners, signs, and/or dividers as a stand.   The stand extends beyond the width of the fabric banner, signs and/or dividers.

15.    MSC CRUISES chose to place one of the stands partially in the walkway between the seating area and the main walkway where the cruise line knew or should have known passengers will travel.  This walkway is one of the most highly trafficked areas within its busy

buffet restaurant.  MSC CRUISES knew or should have known that the lane of travel between the area the cruise line provides for passengers to sit to eat and drink must be free of tripping hazards.

16.     On November 1, 2018, Plaintiff, BESU, was at the Calumet Buffet Restaurant to have lunch. BESU was walking from the buffet line when she tripped and fell on the base of the fabric banner, sign and/or divider. After the fall, BESU went to the cruise ship's infirmary for treatment of her injuries. When the MSC Divina was in port in Colon, Panama, BESU also sought treatment from a local orthopedist for her injuries.

17.     The Defendant either had actual knowledge of the dangerous condition; and/or had constructive knowledge of the dangerous condition.

18.     MSC CRUISES knew or should have known of the dangerous condition. One of crewmembers on board the *MSC Divina* admitted that he did not know why the fabric banner, sign and/or divider was placed where BESU tripped and fell.  That crewmember told BESU that he personally tripped on the base of the fabric banner, sign and/or divider the day before BESU tripped and fell. That crewmember advised MSC CRUISES of the dangers of the fabric banner, sign and/or divider prior to BESU tripping and falling on the fabric banner, sign and/or divider.

19.     When BESU tripped and fell, she sustained serious injuries including but not limited to a displaced proximal humerus and humeral shaft fracture with angulation. BESU has experienced and continues to experience pain, stiffness, weakness, and decreased mobility in her right arm and neck. BESU also sustained an injury to her eyelid when she tripped and fell on board the *MSC Divina* These symptoms are permanent and are expected to continue in the future.

## COUNT I
## NEGLIGENT FAILURE TO MAINTAIN

20.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1-19, above.

21.     This is an action for negligence due to MSC CRUISES negligent failure to maintain the walkway between the seating area and the main walkway used to access the buffet line in the Calumet Buffet in a reasonably safe manner.

22.     **DUTIES OWED BY MSC CRUISES**: MSC CRUISES owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances**."** *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for its failure to maintain the walkway between the seating area and the main walkway used to access the buffet line in the Calumet Buffet in a reasonably safe manner.

23.     MSC CRUISES owes a duty of reasonable care under the circumstances. The circumstances are as follows. The circumstances are as follows. One of MSC CRUISES' common areas are its buffets that MSC CRUISES operates on every one of its ships. MSC CRUISES knew or should have known that the lane of travel between the area the cruise line provides for passengers to sit to eat and drink must be free of tripping hazards. This walkway is one of the most highly trafficked areas within its busy buffet restaurant.  MSC CRUISES chose to place one of the stands, with an extended base, partially in the walkway between the seating area and the main walkway. The extended bases on the stands blend in with the floor and are not readily apparent to passengers. This is an on-going problem of which MSC CRUISES is well-aware. For these reasons, MSC CRUISES' duty of care includes maintaining the walkway between the seating area and the main walkway used to access the buffet line in the Calumet Buffet in a reasonably safe manner which includes keeping the walkway free of obstacles and/or tripping hazards.

24.     MSC CRUISES, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, <u>subpart 1.1</u> "safe escape routes shall be provided."); <u>subpart 1.2</u> ("escape routes shall be maintained in a safe condition clear of obstacles.")  MSC CRUISES' walkways in its buffets are escape routes that MSC CRUISES knew or should have known it must maintain in a safe, clear, clean and secure condition.

25.     MSC CRUISES should have become aware that MSC CRUISES was not maintaining the walkway between the seating area and the main walkway used to access the buffet line in the Calumet Buffet in a reasonably safe manner as there were the tripping hazards known to MSC CRUISES but not readily apparent to passengers in the walkway of the Calumet Buffet.

26.     MSC CRUISES should have become aware that MSC CRUISES was not maintaining the walkway between the seating area and the main walkway used to access the buffet line in the Calumet Buffet in a reasonably safe manner as there were tripping hazards known to MSC CRUISES but not readily apparent to passengers in the walkway of the Calumet Buffet for several reasons, including but not necessarily limited to the following. At the time BESU tripped and fell, there was a crew member at the Calumet Buffet onboard the *MSC Divina* that had personally tripped and fell on the extended base of the fabric banner, sign and/or divider in the walkway to the buffet. However, that crew member did not warn BESU of the dangerous tripping hazard in the walkway of the Calumet Buffet onboard the *MSC Divina.*

27.     Upon information and belief MSC CRUISES, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S.

Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, <u>MSC Circular 735</u> (24 June 1996); U.S. Access Board, <u>Draft Passenger Vessel Accessibility Guidelines</u> (2000-present) and ADA <u>Accessibility Guidelines</u>; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; <u>Life Safety Code</u>; and Safety of Life at Sea SOLAS) Treaty.

28.     Upon information or belief, MSC CRUISES also knew or should have known MSC CRUISES was not maintaining the walkway between the seating area and the main walkway used to access the buffet line in the Calumet Buffet in a reasonably safe manner because of prior similar incidents or complaints. MSC CRUISES documents trip and falls in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing

29.     **<u>MSC CRUISES BREACHED ITS DUTY</u>**.  MSC CRUISES breached its duty of care by failing to provide a reasonably safe ship. MSC CRUISES breached its duty of care by creating a dangerous situation by having obstacles in walkways that cause passengers to trip and fall. MSC CRUISES' violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*

30.     **<u>PROXIMATE CAUSE</u>**: MSC CRUISES' negligent failure to maintain the walkway between the seating area and the main walkway used to access the buffet line in the Calumet Buffet in a reasonably safe manner proximately caused the Plaintiff's injuries.  Had MSC CRUISES properly maintained the walkway between the seating area and the main walkway used to access the buffet line in the Calumet Buffet in a reasonably safe manner, which includes not having obstacles

and/or tripping hazards in walkways that may cause the passengers to trip and fall especially when those obstacles may not be readily apparent to the passenger, the Plaintiff would never have tripped and fallen on the tripping hazard in the walkway to the buffet.

31.   **DAMAGES**: MSC CRUISES' negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; and household and other related expenses in the past and in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against MSC CRUISES for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT II**
**NEGLIGENT FAILURE TO PROVIDE A REASONABLY SAFE SHIP**

32.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1-19, above.

33.     This is an action for negligence due to MSC CRUISES negligent failure to provide a reasonably safe ship.

34.     **DUTIES OWED BY MSC CRUISES**: MSC CRUISES owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances**."** *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for its failure to provide a safe ship.

35.     MSC CRUISES owes a duty of reasonable care under the circumstances. The circumstances are as follows. The circumstances are as follows. One of MSC CRUISES' common areas are its buffets that MSC CRUISES operates on every one of its ships. MSC CRUISES knew or should have known that the lane of travel between the area the cruise line provides for passengers to sit to eat and drink must be free of tripping hazards. This walkway is one of the most highly trafficked areas within its busy buffet restaurant. MSC CRUISES chose to place one of the stands, with an extended base, partially in the walkway between the seating area and the main walkway. The extended bases on the stands blend in with the floor and are not readily apparent to passengers. This is an on-going problem of which MSC CRUISES is well-aware. For these reasons, MSC CRUISES' duty of care includes providing a reasonably safe ship.

36.     MSC CRUISES, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International

Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  MSC CRUISES' walkways in its buffets are escape routes that MSC CRUISES knew or should have known it must maintain in a safe, clear, clean and secure condition.

37.     MSC CRUISES should have become aware that MSC CRUISES was not providing a reasonably safe ship to passengers as there were the tripping hazards known to MSC CRUISES but not readily apparent to passengers in the walkway of the Calumet Buffet.

38.     MSC CRUISES should have become aware that MSC CRUISES was not providing a reasonable safe ship to passengers as there were tripping hazards known to MSC CRUISES but not readily apparent to passengers in the walkway of the Calumet Buffet for several reasons, including but not necessarily limited to the following. At the time BESU tripped and fell, there was a crew member at the Calumet Buffet onboard the *MSC Divina* that had personally tripped and fell on the extended base of the fabric banner, sign and/or divider in the walkway to the buffet. However, that crew member did not warn BESU of the dangerous tripping hazard in the walkway of the Calumet Buffet onboard the *MSC Divina.*

39.     Upon information and belief MSC CRUISES, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines  (2000-present) and ADA Accessibility Guidelines;

46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; <u>Life Safety Code</u>; and Safety of Life at Sea SOLAS) Treaty.

40.    Upon information or belief, MSC CRUISES also knew or should have known MSC CRUISES was not providing a reasonably safe ship because of prior similar incidents or complaints. MSC CRUISES documents trip and falls in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing

41.    **MSC CRUISES BREACHED ITS DUTY**.  MSC CRUISES breached its duty of care by failing to provide a reasonably safe ship. MSC CRUISES breached its duty of care by creating a dangerous situation by having obstacles in walkways that cause passengers to trip and fall. MSC CRUISES' violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*

42.    **PROXIMATE CAUSE**: MSC CRUISES' negligent failure to provide a reasonably safe ship proximately caused the Plaintiff's injuries.  Had MSC CRUISES properly provided a reasonably safe ship, which includes not having obstacles in walkways that may cause the passengers to trip and fall especially when those obstacles may not be readily apparent to the passenger, the Plaintiff would never have tripped and fallen on the tripping hazard in the walkway to the buffet.

43.    **DAMAGES**: MSC CRUISES' negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; and household and other related expenses in the past and in the future. Those injuries and damages also include but are not limited to non-economic damages including

pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future

WHEREFORE, the Plaintiff demands Judgment against MSC CRUISES for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT III
## NEGLIGENT FAILURE TO WARN

44.     The Plaintiff, JUSTA BESU, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 19, above.

45.     This is an action for negligence of MSC CRUISES failing to warn passengers, including the Plaintiff, of its hazards, risks or dangers.

46.     **DUTIES OWED BY THE DEFENDANT**. MSC CRUISES owes a "duty to exercise reasonable care for the safety of its passengers," including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). Additionally, the Defendant's "duty is to warn of dangers

known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985).

47.     MSC CRUISES owes a duty as a common carrier to its passengers to warn of dangers known to MSC CRUISES where MSC CRUISES invite or reasonably expect passengers to go.  MSC CRUISES owes a duty of reasonable care under the circumstances. The circumstances are that MSC CRUISES knew or should have known that the lane of travel between the area the cruise line provides for passengers to sit to eat and drink must be free of tripping hazards. This walkway is one of the most highly trafficked areas within its busy buffet restaurant.  MSC CRUISES chose to place one of the stands, with an extended base, partially in the walkway between the seating area and the main walkway. The extended base on the stands blends in with the floor and is not readily apparent to passengers.   This is an ongoing, continuous problem of which MSC CRUISES is well aware. In fact, one of crewmembers on board the *MSC Divina* also tripped on the base of the fabric banner, sign and/or divider. That crewmember advised MSC CRUISES of the dangers of the fabric banner, sign and/or divider prior to BESU tripping and falling on the fabric banner, sign and/or divider. MSC CRUISES' passengers may not know of the tripping hazard. For these reasons, MSC CRUISES duty of care includes warning its passengers that the base of the fabric banner, sign and/or divider can be hazardous, risky and/or a dangerous which may cause a passenger to trip and fall.

48.     MSC CRUISES, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.") MSC CRUISES' walkways in its buffets are escape routes that MSC CRUISES knew or should have known it must maintain in a safe, clear, clean and secure condition.

49.     The Defendant either had actual knowledge of the dangerous condition; and/or had constructive knowledge of the dangerous condition.

50.     MSC CRUISES knew or should have known of the dangerous condition. One of crewmembers on board the *MSC Divina* admitted that he did not know why the fabric banner, sign and/or divider was placed where BESU tripped and fell.  That crewmember told BESU that he personally tripped on the base of the fabric banner, sign and/or divider the day before BESU tripped and fell. That crewmember advised MSC CRUISES of the dangers of the fabric banner, sign and/or divider prior to BESU tripping and falling on the fabric banner, sign and/or divider

51.     Upon information or belief, MSC CRUISES also knew or should have known of the dangerous condition of the fabric banner, sign and/or divider because of prior similar incidents or complaints. MSC CRUISES documents trip and falls in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing

52.     Upon information and belief MSC CRUISES, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety

organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, <u>MSC Circular 735</u> (24 June 1996); U.S. Access Board, <u>Draft Passenger Vessel Accessibility Guidelines</u>  (2000-present) and ADA <u>Accessibility Guidelines</u>; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; <u>Life Safety Code</u>; and Safety of Life at Sea SOLAS) Treaty.

53.  **THE DEFENDANT BREACHES OF DUTY.**  MSC CRUISES breached its duty to warn the Plaintiff of tripping hazard in the Calumet Buffet Restaurant. MSC CRUISES breached its duties to the Plaintiff by its actions and conduct.  MSC CRUISES through its crew members failed to reasonably and regularly place signs, stickers, lights, and other visual or written notices on or near the fabric banner, sign and/or divider in the highly trafficked walkway of the buffet restaurant. MSC CRUISES' crew members failed to reasonably and regularly make audible announcements that the fabric banners, signs and/or dividers are a tripping hazard. MSC CRUISES also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. MSC CRUISES' violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

54.  **PROXIMATE CAUSE**: MSC CRUISES' failure to properly warn the Plaintiff of the tripping hazard proximately caused the Plaintiff's injuries. Had MSC CRUISES properly warned the Plaintiff of the tripping hazard, the Plaintiff would have been aware of the extended base of the fabric banner, sign and/or divider in the walkway to the buffet. The Plaintiff therefore

would have never tripped and fallen on the extended base of the fabric banner, sign and/or divider in the walkway to the buffet.

55.    **DAMAGES**: MSC CRUISES' negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; and household and other related expenses in the past and in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against MSC CRUISES for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT IV**
**NEGLIGENT TRAINING OF PERSONNEL**

56.    The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1-19, above

17

57.     This is an action for negligence of MSC CRUISES negligent training of shipboard crewmembers.

58.     **DUTIES OWED BY THE DEFENDANT**.   MSC CRUISES owes a "duty to exercise reasonable care for the safety of its passengers," including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to train its shipboard crew members.

59.     MSC CRUISES owe a duty of reasonable care under the circumstances. The circumstances are as follows. MSC CRUISES train its shipboard crewmembers to warn passengers of hazardous conditions that may cause passengers to trip and fall. One of MSC CRUISES' common areas are its buffets that MSC CRUISES operates on every one of its ships. MSC CRUISES knew or should have known that the lane of travel between the area the cruise line provides for passengers to sit to eat and drink must be free of tripping hazards. This walkway is one of the most highly trafficked areas within its busy buffet restaurant.  MSC CRUISES chose to place one of the stands, with an extended base, partially in the walkway between the seating area and the main walkway. The extended bases on the stands blend in with the floor and are not readily apparent to passengers. This is an on-going problem of which MSC CRUISES is well-aware. For these reasons, MSC CRUISES' duty of care includes training its crew members to warn passengers of the tripping hazard in the walkway of the Calumet Buffet aboard *MSC Divina*.

60.     MSC CRUISES, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified

international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, <u>subpart 1.1</u> "safe escape routes shall be provided."); <u>subpart 1.2</u> ("escape routes shall be maintained in a safe condition clear of obstacles.")  MSC CRUISES' walkways in its buffets are escape routes that MSC CRUISES knew or should have known it must maintain in a safe, clear, clean and secure condition.

61.     MSC CRUISES train its shipboard crewmembers to warn passengers of obstacles in walkways that may cause passengers to trip and fall. MSC CRUISES knew or should have known of the importance of training its crewmembers to warn passengers of obstacles in walkways that may cause the passengers to trip and fall. MSC CRUISES train its crewmembers that passenger may not be able to see obstacles in walkways as it blends in with flooring and passengers may not know that they could trip and fall because of the obstacle in the walkway. MSC CRUISES knew or should have known the importance of training its crewmembers that passenger may not be able to see obstacles in walkways as it blends in with flooring and passengers may not know that they could trip and fall because of the obstacle in the walkway. MSC CRUISES train its crewmembers to warn passengers of tripping hazards verbally, with warning signs, and/or marking the area or blocking off the area to prevent passengers from tripping and falling. MSC CRUISES knew or should have known of the importance of training its crew members to warn passengers of tripping hazards verbally, with warning signs, and/or marking the area or blocking off the area to prevent passengers from tripping and falling. MSC CRUISES also distribute crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos.  MSC CRUISES document trip hazards and prior trip and falls in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of trip and falls; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.  MSC CRUISES also distribute crew member training

materials; safety warning messages including those made through verbal announcement, newsletters and safety videos. However, despite knowing how and the reason why MSC CRUISES should train its crewmembers, MSC CRUISES failed to do so.

62.     Upon information and belief MSC CRUISES, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment. See, *e.g.*, IMO, <u>MSC Circular 735</u> (24 June 1996); U.S. Access Board, <u>Draft Passenger Vessel Accessibility Guidelines</u> (2000-present) and ADA <u>Accessibility Guidelines</u>; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; <u>Life Safety Code</u>; and Safety of Life at Sea SOLAS) Treaty.

63.     MSC CRUISES duty to properly train its crewmembers is part of MSC CRUISES duty of reasonable care under the circumstances. This duty requires MSC CRUISES to properly train its crew members to properly to warn passengers of obstacles in walkways that may cause the passengers to trip and fall especially when those obstacles may not be readily apparent to the passenger.

64.     **<u>MSC CRUISES BREACHED ITS DUTY</u>**: MSC CRUISES breached its duty of care owed to the Plaintiff and was negligent by failing to reasonably train its crewmembers to warn passengers of obstacles in walkways that may cause the passengers to trip and fall especially when those obstacles may not be readily apparent to the passenger. MSC CRUISES' violation of applicable and mandatory safety regulations and standards constitutes negligence *per se.*

65.     At the time BESU tripped and fell, there was a crew member at the Calumet Buffet onboard the *MSC Divina* that had personally tripped and fell on the extended base of the fabric banner, sign and/or divider in the walkway to the buffet. Because this crew member was not properly trained, this crew member failed to properly and adequately warn passengers, like BESU, of the dangerous tripping hazard in the walkway of the buffet.

66.     **PROXIMATE CAUSE**: MSC CRUISES' failure to properly train MSC CRUISES crew members proximately caused the Plaintiff's injuries.  Had MSC CRUISES properly trained MSC CRUISES' crew members to warn passengers of obstacles in walkways that may cause the passengers to trip and fall especially when those obstacles may not be readily apparent to the passenger, the crewmember would have warned the Plaintiff of the tripping hazard and the Plaintiff would have been aware of the extended base of the fabric banner, sign and/or divider in the walkway to the buffet. The Plaintiff therefore would never have tripped and fallen on the tripping hazard in the walkway to the buffet.

67.     **DAMAGES**: MSC CRUISES' negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; and household and other related expenses in the past and in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against MSC CRUISES for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

<u>**COUNT V**</u>
<u>**NEGLIGENT SUPERVISION OF PERSONNEL**</u>

68.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1-19, above

69.     This is an action for negligence of MSC CRUISES negligent supervision of shipboard crewmembers.

70.     <u>**DUTIES OWED BY THE DEFENDANT**</u>.  MSC CRUISES owes a "duty to exercise reasonable care for the safety of its passengers," including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to supervise its shipboard crew members.

71.     MSC CRUISES owes a duty as a common carrier to its passengers to supervise its crew members to ensure MSC CRUISES' crew members are properly warning passengers of dangers known to MSC CRUISES where MSC CRUISES invite or reasonably expect passengers

to go. MSC CRUISES owe a duty of reasonable care under the circumstances. The circumstances are as follows. One of MSC CRUISES' common areas are its buffets that MSC CRUISES operates on every one of its ships. MSC CRUISES knew or should have known that the lane of travel between the area the cruise line provides for passengers to sit to eat and drink must be free of tripping hazards. This walkway is one of the most highly trafficked areas within its busy buffet restaurant.  MSC CRUISES chose to place one of the stands, with an extended base, partially in the walkway between the seating area and the main walkway. The extended bases on the stands blend in with the floor and are not readily apparent to passengers. This is an on-going problem of which MSC CRUISES is well-aware. For these reasons, MSC CRUISES' duty of care includes supervising its crew members to ensure that the crew members are warning passengers of the tripping hazard in the walkway of the Calumet Buffet aboard *MSC Divina*.

72.     MSC CRUISES, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  MSC CRUISES' walkways in its buffets are escape routes that MSC CRUISES knew or should have known it must maintain in a safe, clear, clean and secure condition.

73.     MSC CRUISES should have become award of the crew member(s) failure to warn passengers of the tripping hazards known to MSC CRUISES but not readily apparent to passengers in the walkway of the Calumet Buffet.

74.     MSC CRUISES should have become aware that MSC CRUISES' crew member(s) were failing to warn passengers of the tripping hazards known to MSC CRUISES but not readily

apparent to passengers in the walkway of the Calumet Buffet for several reasons, including but not

necessarily limited to the following. At the time BESU tripped and fell, there was a crew member at

the Calumet Buffet onboard the *MSC Divina* that had personally tripped and fell on the extended base

of the fabric banner, sign and/or divider in the walkway to the buffet. However, that crew member

did not warn BESU of the dangerous tripping hazard in the walkway of the Calumet Buffet onboard

the *MSC Divina*.

75.     Upon information and belief MSC CRUISES, at all relevant times, knew or should

have known of industry safety standards applicable to maintaining safe walkways. Prominent safety

organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S.

Access Board, and the American Society for Testing and Materials (ASTM) International has led to

the formulation and promulgation of stair and walkway safety standards and guidelines which apply

to the marine environment.  See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board,

Draft Passenger Vessel Accessibility Guidelines  (2000-present) and ADA Accessibility Guidelines;

46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea

SOLAS) Treaty.

76.     MSC CRUISES duty to properly supervise its crewmembers is part of MSC

CRUISES duty of reasonable care under the circumstances. This duty requires MSC CRUISES to

properly supervise its crew members to properly to warn passengers of obstacles in walkways that

may cause the passengers to trip and fall especially when those obstacles may not be readily apparent

to the passenger.

77.     **MSC CRUISES BREACHED ITS DUTY**: MSC CRUISES breached its duty of

care owed to the Plaintiff and was negligent by failing to reasonably supervise its crewmembers

to ensure its crewmember's are properly warning passengers of obstacles in walkways that may

cause the passengers to trip and fall especially when those obstacles may not be readily apparent to the passenger. MSC CRUISES' violation of applicable and mandatory safety regulations and standards constitutes negligence *per se.*

78.     **PROXIMATE CAUSE**: MSC CRUISES' failure to properly supervise MSC CRUISES' crew members proximately caused the Plaintiff's injuries.  Had MSC CRUISES properly supervised MSC CRUISES' crew members to warn passengers of obstacles in walkways that may cause the passengers to trip and fall especially when those obstacles may not be readily apparent to the passenger, the crewmember would have warned the Plaintiff of the tripping hazard and the Plaintiff would have been aware of the extended base of the fabric banner, sign and/or divider in the walkway to the buffet. The Plaintiff therefore would never have tripped and fallen on the tripping hazard in the walkway to the buffet.

79.     **DAMAGES**: MSC CRUISES' negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; and household and other related expenses in the past and in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against MSC CRUISES for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future;

lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate

**COUNT VI**
**NEGLIGENT DESIGN, CONSTRUCTION AND SELECTION OF MATERIALS**

80. The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1-19, above

81. This is an action for negligence due to MSC CRUISES' negligent design, construction and selection of materials.

82. **DUTIES OWED BY MSC CRUISES**: MSC CRUISES owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances**." *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for negligent design, construction and selection of materials on the *MSC Divina.*

83. MSC CRUISES owes a duty of reasonable care under the circumstances. The circumstances are as follows. MSC CRUISES custom built the *MSC Divina* cruise ship in a shipyard in France. The *MSC Divina* was delivered to MSC CRUISES as finished on May 19, 2012. MSC CRUISES has operated and maintained the ship continuously since that time. The *MSC Divina* is a cruise ship which MSC CRUISES had custom built to specifications and designs which

were made by or under the supervision and participation of MSC CRUISES. The *MSC Divina* was designed by or at the direction of MSC CRUISES' shoreside New Build and other shoreside departments. MSC CRUISES employ architects, designers, and engineers. The exterior and interior of the ship was built in France at a shipyard under the constant supervision of MSC CRUISES' onsite construction managers, designers, architects, and engineers. Under the contract with the shipyard, MSC CRUISES not only had full access to the ship to inspect and the ability to inspect the designs used for construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. MSC CRUISES hold the ultimate control under their contract with the yard, if an item or design is rejected or at issue and not resolved, MSC CRUISES can withhold payment.  That includes the materials used at Calumet Buffet Restaurant aboard the *MSC Divina* which caused this fall and these injuries.

84.     MSC CRUISES also own and operate the *MSC Splendida, MSC Fantasia, MSC Preziosa, MSC Seaside, MSC Meraviglia and MSC Seaview*.  MSC CRUISES has operated and maintained its ships, listed above, continuously since the time when each of those ships were first built and put into service.  MSC CRUISES also custom built to specifications and designs which were made by or under the supervision and participation of all MSC CRUISES ships, listed above. The design and construction of these ships was under the supervision and with the participation of MSC CRUISES personnel who were stationed onsite in the shipyard during construction. *MSC Preziosa* was designed and built to be identical to the *MSC Divina*.

85.     Upon information or belief, MSC CRUISES maintain shoreside departments that are responsible for the design, selection and construction of MSC CRUISES' ships. Upon information or belief, MSC CRUISES also maintain shoreside departments that are responsible for changes and modification to the design, construction and selection of materials when MSC CRUISES refit or

modify its ships. These shoreside departments consist of naval architects, engineers, designers and other employees who are employed by MSC CRUISES.  As such, MSC CRUISES maintained the ultimate control over the design and construction of the *MSC Davina* as well as for the *MSC Preziosa.* Upon information and belief, MSC CRUISES' contract with the shipyard allowed MSC CRUISES to make progressive payments as work was completed. MSC CRUISES' payment scheme allowed MSC CRUISES the power and right to demand changes and modifications to the design, selection of materials and construction of the ship at any time.

86.     MSC CRUISES chose to create, design, and construct banners, signs and/or dividers in the walkway of the Calumet Buffet Restaurant.

87.     MSC CRUISES should have known that the banners, signs and/or dividers it chose to create, design, and construct in the walkway of the Calumet Buffet Restaurant were reasonably dangerous.

88.     Upon information or belief, MSC CRUISES should also have known that the banners, signs and/or dividers it chose to create, design, and construct in the walkway of the Calumet Buffet Restaurant were reasonably dangerous because of prior similar incidents or complaints. MSC CRUISES documents trip and falls in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing

89.     MSC CRUISES, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1

28

"safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  MSC CRUISES' walkways in its buffets are escape routes that MSC CRUISES knew or should have known it must maintain in a safe, clear, clean and secure condition.

90.     Upon information and belief MSC CRUISES, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways, staircases and floor materials.  Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of star and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

91.     MSC CRUISES' duty to design, construct and select materials for all areas and features of its vessels, including the banners, signs and/or dividers in the Calumet Buffet Restaurant aboard the *MSC Divina*, is part of MSC CRUISES' duty of reasonable care under the circumstances. MSC CRUISES had a duty design the banners, signs and/or dividers in the Calumet Buffet Restaurant aboard the *MSC Divina* in a reasonably safe manner and in accordance with industry standards.  MSC CRUISES' duty is part of its duty of reasonable care under the circumstances.

92.     **MSC CRUISES BREACHED ITS DUTY**: MSC CRUISES breached its duty of care owed to the Plaintiff and was negligent by failing to design, construct, select, approve and/or reject the banners, signs and/or dividers in the Calumet Buffet Restaurant aboard the *MSC Divina*. MSC CRUISES failed to design, construct, select, approve and/or reject materials that complied

with industry standards.  The design and/or materials MSC CRUISES selected and used to construct the banners, signs and/or dividers in the Calumet Buffet Restaurant aboard the *MSC Divina* was unreasonably dangerous.

93.    Because MSC CRUISES had the ultimate control over the design, construction and selection of materials for its ships, MSC CRUISES could refuse to approve the design, construction and selection of materials used for the banners, signs and/or dividers in the Calumet Buffet Restaurant aboard the *MSC Divina*. MSC CRUISES knew or should have known about the dangerousness of the banners, signs and/or dividers in the Calumet Buffet Restaurant aboard the *MSC Divina.*

94.    MSC CRUISES knew or should have known of the dangerousness of the banners, signs and/or dividers in the Calumet Buffet Restaurant aboard the *MSC Divina* since their installation in 2010 and/or any changes or modifications.  MSC CRUISES' violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

95.    **PROXIMATE CAUSE**: MSC CRUISES' negligent design, construct and select materials proximately caused the Plaintiff's injuries.  Had MSC CRUISES properly designed, constructed and selected the materials of the banners, signs and/or dividers in the Calumet Buffet Restaurant aboard the *MSC Divina*, the Plaintiff would never have walked onto the dangerous walkway.  The Plaintiff therefore would never have tripped and fallen down.

96.    **DAMAGES**: MSC CRUISES' negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; and household and other related expenses in the past and in the future. Those injuries and damages also include but are not limited to non-economic damages including

pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against MSC CRUISES for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By:  /s/ _Lisa Goodman_

**LISA C. GOODMAN, ESQ**. (FBN 118698)
lgoodman@hickeylawfirm.com
**JOHN H. HICKEY, ESQ**. (FBN 305081)
hickey@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Attorney for the Plaintiff*